# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DENISE REED,** | ) |
| Plaintiff, | ) Civil Action No. |
| v. | ) 19-12369-FDS |
| **ANDREW SAUL, Commissioner,** | ) |
| **Social Security Administration,** | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR ORDER REVERSING THE COMMISSIONER'S DECISION AND DEFENDANT'S MOTION FOR ORDER AFFIRMING COMMISSIONER'S DECISION

**SAYLOR, C.J.**

This is an appeal from the final decision of the Commissioner of the Social Security Administration denying an application for supplemental security income ("SSI") benefits. Plaintiff Denise Reed alleges that she became disabled on January 1, 2013, after various impairments rendered her unable to work. She submitted medical records indicating that she suffers from various ailments, including patellar tendinitis, degenerative joint disease of the knees, depression, bipolar disorder, anxiety disorder, post-traumatic stress disorder, alcohol dependence, substance abuse, and obesity. She now disputes the Commissioner's holding that she is not "disabled" within the meaning of the Social Security Act.

Pending before the Court is Reed's appeal and the Commissioner's motion to affirm. For the reasons stated below, Reed's motion to reverse and remand will be granted and the Commissioner's motion to affirm will be denied.

## I. Background

The following is a summary of the evidence as stated in the administrative record ("A.R.") and the parties' relevant memoranda.

### A. Education and Occupational History

Denise Reed was born on July 27, 1974, and is currently 46 years old. (A.R. at 26). At the alleged onset of her disability on January 1, 2013, she was 38 years old. She has an eleventh-grade education and has not obtained a GED. (*Id.* at 19, 26, 226).

Until April 2018, Reed was volunteering two days a week at a thrift shop at her church, where she worked as a cashier, sorted donated clothes, and assisted customers. (*Id.* at 19). Since July 2018, she has worked part-time, three hours per day and four days per week, making jewelry at Rosie's Place, a women's shelter. (*Id.*). Her other vocational history includes work as a cashier from 1998 to 1999, as a telemarketer in 2002, as a housekeeper from 2002 to 2006, and as a personal-care attendant in 2008. (*Id.* at 128). She has not been engaged in gainful employment since August 31, 2017, the date of her application for benefits. (*Id.* at 14).

### B. Medical History

Reed alleges an inability to work due to disability caused by a variety of physical and mental-health issues. (*Id.* at 19-20).

On August 25, 2017, Reed reported to Lisa Goldstein, N.P., that she had aching and locking in her right knee and soreness in her left knee. (*Id.* at 19). X-rays taken on the same day showed no evidence of joint effusion on either side, although there was mild narrowing of the medial tibiofemoral joint space on both sides. (*Id.*).

On September 19, 2017, Reed saw Lester Sheehan, M.D., and reported the same complaints. (*Id.* at 20). On examination, her range of motion was good in both knees, but there

was a small possible effusion in the right knee. (*Id.*). X-rays showed early degenerative arthritis in both knees, slightly worse on the right. (*Id.*). Dr. Sheehan injected the right knee with Depo-Medrol, a steroid. (*Id.*).

On October 4, 2017, Reed visited Abbas Zaidi, M.D. His office recorded her weight as 180 pounds and her height as 61 inches, resulted in a Body Mass Index of 34, within the obese category. (*Id.*).

Reed has received psychiatric care from a young age, due in part to a reportedly traumatic upbringing. (*Id.* at 509). She has a history of both substance abuse and bipolar disorder and has been in and out of multiple in-patient treatment programs since September 2017. (*Id.* at 467, 560, 708). She was treated in a partial hospitalization program at Arbour HRI Hospital from September 25 to October 31, 2017. (*Id.* at 467-555). From November 15 through December 21, 2017, she was again treated at Arbour HRI Hospital. (*Id.* at 22, 556-700). On January 16, 2018, she was admitted to Newton-Wellesley Hospital for a week. (*Id.* at 838). From February 26 to March 27, 2018, she was again admitted to Arbour HRI Hospital for another 30 days. (*Id.* at 701-836).

Mental-health evaluations during hospitalization programs generally showed good executive functioning and a lack of suicidal ideation, depression, hallucination, or anxiety. (*Id.* at 479-80, 598, 620, 656, 675). However, between hospitalizations, Reed's mental health would deteriorate, signs of anxiety or depression would often manifest, and she would often be reluctant to take her medication and would return to substance abuse. (*Id.* at 486, 710, 782, 840, 852-53). For example, she was transported to Boston Medical Center on both June 24 and June 25, 2018, due to excessive intoxication, at one point registering a blood alcohol level of 0.201. (*Id.* at 23). Neither Reed nor her physicians have clearly identified the reasons for her non-compliance with

outpatient treatment or proper use of medication. (*Id*. at 19, 489-90). In total, she was hospitalized, either fully or partially, for 118 days between August 31, 2017, and January 3, 2019. (Pl. Reply at 2).

### C. RFC and Related Opinions

In November 2017, the state agency reviewer at the initial stage, Theresa Kriston, M.D., concluded that Reed was not disabled and had the following physical residual functional capacity: she could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds, stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday, sit (with normal breaks) for a total of about six hours in an eight-hour workday, and push and/or pull (including operation of hand and/or foot controls) a limited amount. (*Id*. at 124-25). The reviewer also found that she was able to occasionally climb ramps/stairs, balance, stoop, kneel, crouch, crawl, and climb ladders/ropes/scaffolds. (*Id*. at 124-25).

Also in November 2017, William Alexander, Ph.D., reviewed Reed's medical records for a mental residual functional capacity assessment. He concluded that she had limitations in all categories discussed: understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (*Id.* at 125-27). He found that she appeared capable of understanding and remembering simple work-related instructions; had symptoms related to mental-health issues, but appeared capable of performing simple work-related tasks for two-hour periods during a normal workday; experienced some difficulties in social interaction, but appeared capable of managing interpersonal interactions in the workplace; and could manage minor stressors and simple changes in routine work activities. (*Id*. at 126-27). Dr. Alexander also concluded that she had mild impairment in understanding, remembering, and applying information; moderate impairment in maintaining concentration and managing herself; and

severe impairments related to depression or bipolar disorder, trauma or stress-related disorders, substance addiction, and obesity. (*Id*. at 121-22).

Despite her history of hospitalization for bipolar disorder and substance abuse, state psychological consultant Dr. Alexander testified that Reed would continue to improve with mental-health treatment and abstinence, ultimately opining that she would be able to return to light work. (*Id*. at 122, 128-29).

On March 15, 2018, at the reconsideration stage, Alice Truong, M.D., and Robert Lasky, Ph.D., affirmed the initial reviewers' determination that Reed was not disabled. (*Id*. at 136-42).

Because of Reed's three additional hospitalizations between November 2017 and June 2018, substantial additional medical records were generated between the time that the record was reviewed by state consultants and the date of the hearing. (*Id*. at 556-700, 701-836, 838). Those events account for 530 additional pages of records that the consultants apparently did not review in making a determination about her disability. (Pl. Mem. at 7-8).

### D. **Procedural History**

On August 31, 2017, Reed filed for SSI benefits, alleging that she became disabled on January 1, 2013. (*Id*. at 12, 226-36). The Commissioner denied her claim both initially and upon reconsideration. (*Id*. at 117-29, 131-44).

Reed then requested a hearing. On September 21, 2018, she appeared before Administrative Law Judge ("ALJ") Francis Hurley. (*Id*. at 33-80, 157-59). The ALJ issued his decision on January 3, 2019, concluding that she was not disabled. (*Id*. at 9-32).

Reed requested a review of that decision by the Appeals Council. (*Id*. at 222-25, 316-19). On October 2, 2019, the Appeals Council declined to review the decision, making the ALJ's decision the final decision of the Commissioner in this case. (*Id*. at 1-6).

Reed filed the complaint in this action on November 19, 2019, seeking judicial review by this Court pursuant to 42 U.S.C. § 405(g). (Compl. at 2; Pl. Mem. at 1). She has moved to reverse the ALJ's decision on the ground that the opinions by state consultants did not reflect the entirety of her medical record. (Pl. Mem. at 1). Reed alleges that the error was not harmless due to the lack of tolerance for absenteeism, such as that caused by frequent hospitalization, that was presented in the vocational expert's testimony. (*Id.*).

## II.     Analysis

### A.     Standard of Review

Under the Social Security Act, this Court may affirm, modify, or reverse the final decision of the Commissioner, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive," *id.*, because "the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ." *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001) (citation omitted); *see Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 143-44 (1st Cir. 1987). Therefore, "[j]udicial review of a Social Security Claim is limited to determining whether the ALJ used the proper legal standards, and found facts based on the proper quantum of evidence." *Ward v. Commissioner of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).

However, the Court may reverse or remand the ALJ's decision if the ALJ ignored evidence or made legal or factual errors. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings . . . are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."); *Moore v. Astrue*, 2013 WL 812486, at *2 (D. Mass. Mar. 2, 2013) (citation omitted) ("[I]f the ALJ made a legal or factual error, the Court may

6

reverse or remand such decision . . . ."). Accordingly, if the "ALJ failed to record consideration of an important piece of evidence that supports [the claimant's] claim and, thereby, left unresolved conflicts in the evidence, [the] Court can not conclude that there is substantial evidence in the record to support the Commissioner's decision." *Nguyen v. Callahan*, 997 F. Supp. 179, 183 (D. Mass. 1998); *see also Crosby v. Heckler*, 638 F. Supp. 383, 385-86 (D. Mass. 1985) ("Failure to provide an adequate basis for the reviewing court to determine whether the administrative decision is based on substantial evidence requires a remand to the ALJ for further explanation."). Questions of law are reviewed *de novo*. *Seavey*, 276 F.3d at 9.

### B.      Standard for Entitlement to SSI Benefits

An individual is not entitled to SSI benefits unless she is "disabled" within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 1382(a)(1), 1382c(a)(3) (setting forth the definition of disabled in the in the context of SSI). "Disability" is defined, in relevant part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must be severe enough to prevent a claimant from performing not only past work, but also any substantial gainful work existing in the national economy. 20 C.F.R. § 404.1560(c)(1).

The Commissioner uses a sequential five-step process analysis to evaluate whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The steps are:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had . . . a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the 'listed impairments' in the Social Security regulations, then the application is granted; 4) if the applicant's 'residual functional capacity' is such that [s]he . . . can still perform past relevant work,

>then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey*, 276 F.3d at 5; *see* 20 C.F.R. § 404.1520(a)(4).  "The applicant has the burden of production and proof at the first four steps of the process," and the burden shifts to the Commissioner at step five to "com[e] forward with evidence of specific jobs in the national economy that the applicant can still perform." *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). At that juncture, the ALJ assesses the claimant's residual functional capacity in combination with the "vocational factors of [the claimant's] age, education, and work experience," 20 C.F.R. § 404.1560(c)(1), to determine whether the claimant can "engage in any . . . kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

    **C.**    <u>**The Administrative Law Judge's Findings**</u>

In evaluating the evidence, the ALJ followed the established five-step procedure set forth in 20 C.F.R. § 416.920(a)(4).

At the first step, the ALJ found that Reed had not engaged in substantial gainful activity since the application date of August 31, 2017.  (A.R. at 14).  Although she had been employed since the application date, the ALJ determined that her employment did not rise to the level of substantial gainful activity.  (*Id.*).

At the second step, the ALJ addressed the severity of Reed's impairments.  (*Id.* at 14-15). He concluded that she had the following severe impairments:  patellar tendinitis and degenerative joint disease of the right knee; depression; bipolar disorder; anxiety disorder; post-traumatic stress disorder; alcohol dependence; substance abuse; and obesity.  (*Id.*).  He also concluded that her gastroesophageal reflux disease, or GERD, was well-controlled by medication

and not severe, only minimally affecting her ability to perform work-related activities. (*Id*.). He further concluded that although she alleged impairments caused by low-back and right-hip pain, the record did not show them to be medically determinable impairments.

At the third step, the ALJ found that Reed's impairments did not meet or medically equal the severity of a Listed Impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 15). Specifically, he found that the severity requirement of Listing 1.02 (major dysfunction of a joint) was not met because there was "no substantial medical evidence of record to suggest the claimant is unable to ambulate effectively or perform fine and gross movements with her upper extremity, as required by that listing." (*Id*.). The ALJ also found that Reed's mental impairments did not meet or medically equal the criteria of Listings 12.04, 12.06, or 12.15, as she did not meet the requirements of paragraph B or paragraph C. (*Id*. at 15-17). Paragraph B requires mental impairments that result in "at least one extreme or two marked limitations in a broad area of functioning." (*Id*.). The ALJ determined that her mild or moderate impairments in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself did not meet that standard. (*Id*.). The ALJ also determined that her mental impairments did not cause her to achieve only "marginal adjustment," where one has "minimal capacity to adapt to changes in [the] environment" and must "eliminat[e] all but minimally necessary contact with the world," and therefore did not meet the criteria of paragraph C. (*Id*. at 17).

At the fourth step, the ALJ considered Reed's residual functional capacity and her relevant past work. (*Id*. at 18); s*ee* 20 C.F.R. § 404.1520(a)(4)(iv). In doing so, the ALJ considered her medical records, her testimony, and the opinions of state agency medical consultants. (A.R. at 18-25). Among the evidence, the ALJ found to be persuasive the prior

findings made by state agency psychologists William Alexander, Ph.D., and Robert Lasky, Ph.D., in November 2017 and March 2018 respectively, that she retained the capacity to work at a light level of exertion with postural limitations. (*Id*. at 25).  In part, the ALJ found these opinions persuasive because they were consistent with Reed's treating records, the physical-examination findings, the mental-status examinations, and the objective testing contained in the record, as well as her reported activities of daily living. (*Id.*).  He reached that conclusion despite the fact that those findings did not reflect the entirety of Reed's medical records at the time of her hearing. (Def. Mem. at 12; Pl. Mem. at 4-5).  The ALJ added a limitation restricting Reed to work that involves only occasional, brief, superficial interaction with the general public and co-workers. (A.R. at 25).

The ALJ determined that "the evidence does not support the degree of symptomology and functional limitations alleged by [Reed]." (*Id*. at 25-26).  He concluded that she had the residual functional capacity to perform light work as defined in the Commissioner's regulations at 20 C.F.R. § 416.967(b), with the following limitations:

> [S]he can lift and carry 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk for about 6 hours and sit for about 6 hours of an 8-hour workday.  She can occasionally push and pull with the right lower extremity. She can occasionally climb ramps, stairs, ladders, ropes and scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She is able to understand and remember simple instructions.  She is able to maintain attention, concentration, persistence and pace on simple, work related tasks for 2 hours at a time during an 8-hour workday and 40-hour workweek or equivalent work schedule with customary breaks.  She can tolerate occasional, brief, superficial interaction with the general public and co-workers. She is able to adapt to occasional, simple changes in a work setting and routine.

(*Id*. at 18).  The ALJ found that, however, that she was unable to perform past work as a personal-care assistant due to the mental and physical demands of the work. (*Id*. at 26).

At the fifth step, the ALJ assessed the availability of other jobs, considering her age, education, experience, and residual functional capacity.  (*Id.* at 26); *see* 20 C.F.R. § 416.969.  In making that determination, he relied on the testimony of a vocational expert to find that other jobs exist in significant numbers in the national economy that Reed could perform, such as small parts assembler, assembler of small electronic parts, and garment sorter.  (A.R. at 26-27).  The ALJ therefore concluded that Reed was not disabled within the meaning of the Social Security Act.  (*Id.* at 27).

### D. Plaintiff's Objections

Reed raises the following objections to the ALJ decision:  (1) that the ALJ erred in relying on opinions by state agency consultants who did not review substantial medical records received subsequent to their assessment, which documented repeated hospitalizations for mental-health treatment; and (2) that the error was not harmless due to the lack of tolerance for absenteeism expressed by the vocational expert.

#### 1. The ALJ Erred in Relying on State Consultants' Opinions, Which Were Based on a Significantly Incomplete Record

First, Reed contends that the ALJ erred in relying on state agency consultants' opinions that did not reflect the entirety of the record, as the consultants did not have access to more than 500 pages of medical records reflecting three additional mental-health hospitalizations.  Generally, it is "appropriate for the ALJ to give partial weight to the opinion evidence from the state agency consultants," even if such opinions did not consider every medical record, in the absence of contrary opinion evidence or any opinions closer in time to plaintiff's hearing.  *Myers v. Berryhill*, 2019 WL 3976017, at *17 (D. Mass. Aug. 21, 2019) (affirming ALJ's reliance on state agency consultants' RFC assessment, and rejecting plaintiff's argument for reversal based on new medical records because plaintiff did not show reasonable probability that the ALJ's

decision would have been different had he considered the records); *see also Anderson v. Colvin*, 2014 WL 5605124, at *5-6 (D.N.H. Nov. 4, 2014) (affirming ALJ's reliance on consultants' RFC assessment in the absence of contrary or more recent medical opinions, and rejecting plaintiff's argument that ALJ should have considered her more recent records from a physician's assistant, who was not an acceptable medical source).

However, an opinion from a state agency consultant that is based on a "significantly incomplete record" cannot be afforded "significant weight." *Alcantara v. Astrue*, 257 F. App'x 333, 334 (1st Cir. 2007). "The record is significantly incomplete if the evidence added after the consultant's review materially changed the basis for assessing the claimant's limitations." *Blakley v. Saul*, 2019 WL 4668020, at *5 (D.N.H. Sept. 25, 2019). The record remains materially unchanged "where the new evidence either reveals no greater limitations or is arguably consistent with the consultant's assessment." *Id.* (quoting *Giandomenico v. U.S. Soc. Sec. Admin.*, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017)). Thus, "an ALJ may rely on [state agency] opinion[s] where the evidence postdating the reviewer's assessment does not establish any greater limitations . . . or where the medical reports of claimant's treating providers are arguably consistent with . . . the reviewer's assessment." *Abubakar v. Astrue*, 2012 WL 957623, at *12 (D. Mass. Mar. 21, 2012) (*quoting Ferland v. Astrue*, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011)).

Here, the evidence postdating the reviewers' assessments may well reveal additional or greater limitations. Reed's multiple hospitalizations between November 2017 and March 2018 are evidence that her mental health did not "continue to improve with outpatient mental health treatment and abstinence," as the state agency reviewers had anticipated. (*Compare* A.R. at 122, 137 *with* A.R. at 565, 671, 709, 784). Her treating providers certified in four places that she

would have required inpatient psychiatric hospitalization if partial hospitalization services were not provided. (A.R. at 565, 671, 709, 784). That evidence likely constitutes both a "greater limitation" than previously anticipated by state agency consultants and "opinion evidence to the contrary" from her treating physicians, which would preclude an over-reliance on earlier opinions. *See Myers*, 2019 WL 3976017, at *17 (D. Mass. Aug. 21, 2019); *see also Abubakar*, 2012 WL 957623, at *12 (D. Mass. Mar. 21, 2012). Despite this, the non-examining opinions by Dr. Alexander and Dr. Lasky were given controlling weight, with the ALJ's decision deviating only slightly from their conclusions. (*Compare* A.R. at 18 *with* A.R. at 124-27 *and* 138-42). Therefore, it appears that the ALJ relied on assessments that may have been materially incomplete to determine Reed's RFC.

Defendant's principal argument in response is that the new medical records did not establish any greater limitations than, and thus were consistent with, the state agency consultants' original assessment. (Def. Mem. at 13-18). Defendant contends that the state agency psychologists did have access to records from Reed's first partial hospitalization in September and October 2017, which showed that she sought hospitalization for the first time after a period of substance abuse, non-compliance with medication, and a physical altercation, but stabilized while in hospital care. (*Id.* at 14). Based on that information, the state agency consultants concluded that her "function overall will improve with continued opt [sic] mental health treatment and abstinence." (A.R. at 122, 137). According to defendant, her subsequent hospitalizations demonstrated the same pattern of substance abuse and non-compliance with treatment, followed by hospitalization and stabilization. Therefore, they contend, the subsequent three hospitalizations are not evidence of any greater limitation than, or inconsistency with, the conclusions reached after the first hospitalization. In essence, they argue that her subsequent

hospitalizations were caused by drug and alcohol use and her refusal to comply with outpatient treatment options, which the original RFC took into account.

Defendant's contention is plausible, and may ultimately prove to be correct, but it is insufficient to avoid a remand. First, four episodes requiring hospitalization for a mental-health crisis in less than a year is significantly different than one such episode. After Reed's first hospitalization, the conclusion that she could manage her mental health with abstinence and appropriate treatment was reasonable. However, clearly she was *not* able to do so in the months that followed the state agency consultants' findings. Second, a person's inability to control an impairment outside of hospital settings can be, itself, evidence of an impairment. The First Circuit addressed a similar situation in *Roberts v. Barnhart*, 67 F. App'x 621 (1st Cir. 2003), which concerned a claimant with severe depression who was unable to maintain her mental health functioning with outpatient treatment:

> Indeed, the Commissioner's position on appeal is that claimant's problems arose from her non-compliance with treatment and *not* from her incapacity to get control of her impairments through treatment.
>
> While the above position may be correct, we do not think that the ALJ was qualified to make an RFC assessment concerning the extent to which claimant's non-compliance with treatment was under her control and the extent to which, even assuming compliance with treatment, claimant's maladaptive behavior would cease. As we have stated, an expert's RFC evaluation is required where "the record . . . is sufficiently ramified that understanding it requires more than a layperson's effort at a commonsense functional capacity assessment." *Manso–Pizarro, supra,* 76 F.3d at 19.
>
> Based on the foregoing, and viewing all of the evidence in the record as a whole, we think that the record indicates *more* than a mild impairment which imposes *more* than slight restrictions on claimant's mental ability to function. As a result, the ALJ was not permitted to make an RFC assessment, and an expert was required for this task. It thus follows that the ALJ's comparison of the demands of claimant's past work with her mental functional capacity, being based on an invalid RFC assessment, is not supported by substantial evidence.

*Id.* at 623. The court remanded the case for further inquiry as to how claimant's depression, including her inability to comply with her treatment requirements, affected her functional capacity. *Id.*

Here, like the claimant in *Roberts*, Reed has presented additional evidence of hospitalization that potentially shows more than a mild impairment and more than slight restrictions on her ability to function. That evidence should be evaluated as part of an updated RFC assessment that considers the extent to which her repeated hospitalizations were under her control, whether they were symptomatic of her impairment, and the likelihood that her maladaptive behavior would cease even assuming compliance with treatment.

### 2. **The Error Was Not Harmless**

Reed further argues that the error was not harmless due to the fact that employers generally have a low tolerance for employee absenteeism. Under 20 C.F.R. 404.1569(a), absenteeism meets the definition of a nonexertional limitation, restricting the "ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling." The vocational expert who testified at Reed's hearing, John Christianson, indeed stated that employers lacked tolerance for absenteeism, which could preclude fitness for work at all levels of exertion. (*Id*. at 71-78). Christianson expressed that absences of three days per month or twelve days per year would be grounds for termination, and would preclude work at all levels of exertion. (*Id*. at 75-76). He expressed a similar lack of tolerance for late arrival or early departure from work, testifying that such instances would be treated akin to absences altogether. (*Id*. at 77).

Reed was either fully or partially hospitalized for 118 days over a period of 183 days between September 2017 and March 2018. (Pl. Mem. at 10). That period included

hospitalization for 82 days after the consultants' review of her medical records. (Pl. Reply at 4). Despite her significant history of hospitalization, and the vocational expert's testimony on the subject, the ALJ's decision omits discussion of absenteeism as a potential limitation on her ability to sustain gainful employment. (A.R. at 6-32); *see* 20 C.F.R § 404.1569(a). However, because the absenteeism caused by her mental-health issues is undoubtedly greater than that which was contemplated in the incomplete opinions on which the ALJ relied, and because even low levels of absenteeism may preclude work at all levels of exertion, the ALJ's error in relying on such opinions was not clearly harmless. Indeed, the First Circuit recently affirmed a remand due in part to the ALJ's failure to address absenteeism and its effects on the ability of the employee to sustain full-time employment. *See Sacilowski v. Saul*, 959 F.3d 431, 435-441 (1st Cir. 2020); *see also Lopez-Lopez v. Colvin*, 138 F. Supp. 3d 96, 113-14 (D. Mass. 2015) (finding that the failure to address absenteeism despite relevant credible evidence was cause for remand).

Defendant argues that the error was harmless because, by Reed's own admission, she had not yet experienced such absenteeism for a period of twelve months. (Def. Mem. at 17). However, 20 C.F.R. § 416.909 requires that an impairment either last, or be expected to last, for a continuous period of twelve months. The question, then, is whether Reed's history of absenteeism could reasonably be expected to last for twelve months based on the record. Her history of absenteeism had lasted for arguably eight to nine months according to the record, including hospitalization programs from September 2017 to March 2018 in addition to other hospitalizations such as those in June 2018. (*Id*. at 20-23). Furthermore, neither Reed nor her physicians have clearly identified the reasons for her non-compliance with outpatient treatment or proper use of medication, non-compliance which may potentially be excused for mental health considerations under 20 C.F.R. § 416.930(b) and (c). (*Id*. at 19, 489-90). Given those factors,

and the likely low tolerance for absenteeism that can preclude work at any level of exertion, it may be reasonable to infer that absenteeism caused by Reed's mental health issues could be expected to last for a continuous period of at least twelve months according to the record. In any event, that issue should be addressed on remand based on a complete record.

**III.     Conclusion**

For the foregoing reasons, plaintiff's motion for an order to reverse and remand the final decision of the Commissioner of the Social Security Administration is GRANTED, and defendant's motion to affirm the action of the Commissioner is DENIED. This matter is hereby remanded to the Social Security Administration for further proceedings consistent with this opinion.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: August 21, 2020                                     Chief Judge, United States District Court